## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI, HATTIESBURG DIVISION

**SANDRA WILLIS**                                                   **PLAINTIFF**

**VERSUS**                              **CIVIL ACTION NO.  2:13-cv-00060-KS-MTP**

**ALLSTATE INSURANCE COMPANY**
**and JOHN DOES 1 THROUGH 5**                              **DEFENDANTS**

### AMENDED COMPLAINT

COMES NOW the Plaintiff, Sandra Willis (herein referred to as "Sandra") by and through her attorney of record, and files this her Amended Complaint against Defendants Allstate Insurance Company and John Does 1 through 5, and for her causes of action would show unto the Court the following:

### PARTIES

1.      Plaintiff is an adult resident citizen of Forrest County, Mississippi.

2.       Defendant, Allstate Insurance Company, (herein referred to as "Allstate"), is an insurance company doing business in Mississippi, which may be served through its agent for service of process, CT Corporation of Mississippi, located at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

3.      Defendants designated as John Does 1 through 5 are, based upon information and belief, certain unknown and unnamed persons and/or entities who may be liable for the claims asserted herein, who include, but are not limited to, agents, servants, employees, representatives, affiliates, parents, subsidiaries, joint-tortfeasors, tortfeasors, contractors, co-conspirators, joint adventurers, partners, stockholders, or any other related person or entity of the named Defendants and/or any and all other persons who may be liable to Sandra for the claims asserted herein.  Sandra will amend her Complaint once the

identities of the unknown Defendants are learned.

## FACTS

4.   For nearly 20 years, Willis and her family had resided at a home located at 1780 James Street in the Palmer's Crossing District.  Willis has three children and one grandchild who resided from time to time at the Willis Home in the year before the fire.

5.   David Knight and Davidra Knight were in college at the time of the fire, however they maintained their own rooms at the Willis Home, stayed there occasionally, and kept many of their belongings at the Willis Home.

6.   Daughter Charmaine Willis is very ill and frequently in the hospital. Charmaine had one child, a son- Bernatsky Borne, age 8, who was under the primary care of Sandra with help from all three children. With David and Davidra in college and Charmaine in and out of hospitals in Hattiesburg and Jackson in 2012, the Willis home was unoccupied for several weeks sporadically before the fire.

7.   Sandra and all three children testified that Charmaine's ill health caused the following: (1)  Bernatsky, grandson of Willis, had his own room and stayed often at the Willis Home; (2)  Charmaine had her own apartment but kept many of her items personally stored at the Willis Home. (3) Charmaine was hospitalized from June 10, 2012 to June 13, 2012 as evidenced by the hospital records provided at the examination under oath. Sandra spent June 13, 2012 after Charmaine's discharge from the hospital, and June 14, 2012 providing care and treatment for Charmaine at Charmaine's apartment until the time of the call regarding the fire shortly after midnight.

8.   At all times mentioned herein, Sandra's home was insured under a homeowners policy of insurance issued by Allstate. A true and correct copy of the policy is attached hereto as

**Exhibit A.** That policy had been in force and effect for over eight years before the fire.

9.      Just after midnight on June 14, 2012, Sandra's home sustained extensive property damage as a result of a fire.  Sandra submitted a dwelling claim and contents claim to Allstate as a result of this fire and subsequently filed a theft claim as a result of theft related to these events.

10.     On June 14, 2012 Kerri Steger of New Orleans, Louisiana and Jim Price of Shreveport, Lousiana, both adjusters for Allstate, were assigned as the adjusters on Willis' claims. Steger met with Willis to adjust this Hattiesburg, Mississippi claim.  Allstate was responsible to investigate, adjust, and pay the claim commencing when Sandra called the Hattiesburg office of Allstate and reported her claim.

11.     The fire consumed the dwelling portion of the Willis Home and its contents, leaving nothing but ash and rubble.  Many items of personal property in the carport and storage trailer were not burned in the fire but were stolen along with metal window and door bars, ATVs, lawn mowers, and inoperable cars behind the Willis Home, all as documented by the police reports and photos.  Sandra filed a claim for that theft loss with Yvette Lewis of Allstate and was given Allstate Claim #0254988470; however, Allstate failed and refused to do anything on that claim.

12.     On June 18, 2013 James Price spoke with Christian Mulkey (hereinafter "Mulkey"), a special fire investigator for M.A. Stringer and Associates who conducted an on the scene investigation immediately after the fire at the Willis Home at the direction of Allstate. Mulkey represented that based on his investigation, "there was a normal amount of contents in the home."  Mulkey further advised Allstate that "no ignitable liquid residue were detected," that MASA was "unable to determine orgin or cause of the fire due to

severe destruction," and that damage was too extensive to allow investigation.

13.    On June 19, 2013 Mulkey reported to Allstate that he observed in he structure behind the Willis Home "a 60" TV and 2 chiffarobes which were on Willis' contents list.  Allstate acknowledged that the trailer and a building behind the Willis home were filled with contents, some of which appeared to be what Willis was claiming was in the home. Despite this, Allstate determined to conceal this information from Ms. Willis.

14.    Allstate heard a rumor that the Willis home was in foreclosure but Allstate knew this was false because there was no lien, mortgage or deed of trust on the Willis home.

15.    Despite Allstate's receipt of undisputed evidence that personal property was being stolen from the Willis property after the fire and despite Allstate's opening a separate claim file for the theft loss, Allstate did nothing regarding the theft loss claim and never produced the photos of the items that its investigators purportedly observed after the fire, but were subsequently stolen.

16.    Despite investigation by the State Fire Marshall and a private firm, MASA, no evidence ever linked Willis with the cause of the fire and no motive or presence at the scene was ever mentioned. Despite this, the insurance company never paid for the dwelling claim, the contents claim coverage or the theft loss after the fire.  No communication regarding her coverage or policy rights was sent to her regarding these claims.

17.    At no time did Allstate assign a properly trained and Mississippi licensed adjuster to adjust  Sandra's claim.

18.    Arletha Henderson was an insurance adjuster provided through and sent by Allstate to investigate damage to Sandra's home and contents, and she was not properly trained or licensed as an adjuster in the State of Mississippi, contrary to the requirements of

Mississippi law (Miss. Code Ann. §83-17-17, §83-17-19, and §83-17-403).

19.    David and Davidra testified that unbeknownst to their mother they had removed the

following items from the Willis Home: (1) Large screen TV from each bedroom; (2)

Computer from each room; (3) DVD player, DVDs, and a Playstation 3.

20.    Based on that testimony, Sandra amended her claim to delete those items.

21.    After Samuel McHard advised James Price, the Allstate adjuster from Louisiana, that

suit had been filed on March 5, 2013, a check dated Sunday, March 10, 2013 mailed

March 11, 2013 in the amount of policy limits of $75,100 was sent for the dwelling 6

days after the conversation with the out-of-state Allstate adjuster, 269 days after the fire,

227 days after the Fire Marshal investigation, 195 days after the investigation of MASA,

125 days after Ms. Willis' initial examination under oath where the only one question

regarding cause of fire was asked, and 16 days after Samuel McHard's inquiry letter to

the Allstate attorney, James Waldrop. No payment for the theft loss was ever made,

despite the fact that it was confirmed by statements in the Allstate investigation.

22.    At no time did Allstate contend that Sandra intentionally caused the fire or assert any

such policy provision as a reason to avoid or delay payment of her claim, and Allstate

may not "mend this hold."

23.    On February 27, 2013, Willis' contents claim was denied in full for purported

misrepresentation" on the contents of the home. These alleged misrepresentations stem

from Willis listing televisions and electronic equipment in David and Davidra's rooms

which they had taken to their respective temporary college apartments without Ms.

Willis' knowledge. Despite explanation by Willis and her family at their examinations

under oath and McHard's letter, to Allstate attorney James Waldrop, Willis'

homeowner's policy was cancelled effective April 11, 2013.

24.    Allstate dragged their feet extensively in investigating and making a decision on Willis'

three claims, namely the dwelling loss, the contents loss, and the theft loss.

25.    Allstate put Willis through the "ringer" in unreasonably prolonging the investigative and

adjusting process, and ultimately, in bad faith, denied Willis's valid claim under the

Allstate Homeowner's policy.  After suit was filed, Allstate even refused to answer if

Willis could negotiate her dwelling loss check without prejudicing her claim against

Allstate (other than dollar for dollar credit for those proceeds).

## COUNT I – CLAIM FOR POLICY BENEFITS

26.    Sandra incorporates by reference herein the allegations set forth in paragraphs above.

27.    Sandra has made due claims pursuant to the aforesaid policy which arose in connection

with the adjusting of her fire loss claim and related thefts.

28.    Although Sandra has made due demand for payment of policy benefits for the above

occurrence, Allstate failed and refused to provide coverage and refused to pay any

benefits which are now due and remain unpaid, all to the detriment of Sandra.

## COUNT II – CLAIM FOR BAD FAITH, FAILURE TO PAY BENEFITS

29.    Sandra incorporates by reference herein the allegations set forth in paragraphs above.

30.    At all material times, Allstate, acting through their agents, officers, and employees, acted

wrongfully and in bad faith withheld benefits due to Sandra under the policy and failed to

provide Sandra coverage or benefits of the three claims of Sandra which arose in

connection with the occurrence.  The Defendant has reasonably delayed and refused to

provide coverage or benefits under the policy, and knowing Sandra is financially and

emotionally distressed by reason of a refusal of Allstate to provide coverage and to pay

benefits due thereunder.

31.   Allstate acted in bad faith by failing to timely investigate and adjust Willis's claim
      following the loss of her home to a fire on June 14, 2012 and the theft of property which
      occurred in close proximity to the time of the fire. Allstate delayed its investigation and
      unreasonably denied Willis's three claims because of its alleged concern over electronic
      equipment on the contents claim.

32.   Allstate refused to pay benefits on the three Willis claims due under Willis' policy, and
      forced Willis to hire legal counsel to protect Willis' rights under the policy. By refusing
      to explain Willis' rights under each separate claim, timely investigate each separate
      claim, and pay each separate claim, Allstate has acted fraudulently, maliciously,
      oppressively and outrageously towards Willis with conscious disregards for her rights.
      These actions taken by Allstate were purposeful and deliberately undertaken with malice
      and vindictiveness on the part of Allstate. Willis has suffered embarrassment,
      humiliation, and mental and emotional distress because of these actions by Allstate.

33.   Defendants' refusal to pay benefits has compelled Sandra to engage legal counsel and to
      initiate litigation to recover coverage and benefits which are benefits.

34.   Defendants have deprived Sandra of the benefits justly due under the policy, when the
      Defendants knew that those benefits were needed by Sandra.

35.   By unreasonably delaying and refusing to provide benefits of coverage in payment of
      Sandra's valid claim, the Defendants acted fraudulently, oppressively, maliciously, and
      outrageously toward James, with conscious disregard for his rights under the law and
      under the Policies, and with the intent and design of benefitting Allstate financially, of
      harassing Sandra, of discouraging Sandra from asserting valid claims, of avoiding

payment of amounts due for the valid claim, and of causing or willfully disregarding the probability of causing severe emotional distress to Sandra.

36.   The course of conduct of Allstate, as described above, was deliberately undertaken; was wanton, willful, and in reckless disregard of the rights and well being of Sandra, and was attended by malice and vindictiveness on the part of Allstate and by reason thereof, Sandra requests that this Court award punitive damages.

37.   As a direct result of the fraudulent, oppressive, malicious, and outrageous conduct of Allstate and of their bad faith in handling the three claims of Sandra for benefits under the applicable policy, Sandra has sustained substantial economic loss, including but not limited to attorneys fees and seeking to recover benefits under the described Policies. As a further result of Allstate's outrageous and willful conduct and bad faith, Sandra has suffered embarrassment and humiliation and mental and emotional distress and discomfort all to damages in an amount in excess of $100,000.00.

### COUNT III-NEGLIGENCE AND GROSS NEGLIGENCE OF ALLSTATE

38.   James incorporates by reference herein all allegations previously set forth.

39.   The actions and inactions of Allstate, as described alone, constitute negligence, entitling Sandra to all consequential and special damages allowable under law, and further constitute such gross and reckless negligence so as to constitute malice or reckless disregard for Sandra's rights, thereby entitling James to heightened damages, including attorneys fees, interest and punitive damages.

### COUNT IV - BREACH OF CONTRACT

40.   Sandra incorporates by reference herein all allegations set forth above.

41.   The actions and inactions of Allstate, as described above, constitute a breach of contract.

42.     Sandra is entitled to all damages allowable for breach of contract, including, but not

        limited to, consequential damages, special damages, attorneys fees, interest and punitive

        damages.

### COUNT V - TORTUOUS BREACH OF CONTRACT

43.     Sandra incorporates by reference herein all allegations previously set forth.

44.     The course of conduct of Allstate, and the actions and inactions of Allstate, constitute

        breach of the insurance contracts to such an extent as to rise to the level of an

        independent tort constituting tortuous breach of contract, entitling Sandra to

        consequential damages, special damages, attorneys fees, interest and punitive damages,

        and all other damages allowable by law.

### COUNT VI - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

45.     Sandra incorporates by reference herein all allegations set forth above.

46.     The actions and inactions of Allstate, as described above, constitute a breach of  the

        covenant of good faith and fair dealings implied in all contractual arrangements between

        contracting parties in the State of Mississippi, entitling Sandra to all damages allowable

        pursuant to law, including consequential damages, special damages, attorneys fees,

        interest and punitive damages.

### COUNT V - NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47.     Sandra incorporates by reference herein all allegations set forth above.

48.     The actions and inactions of Allstate, as described above, constitute negligent and

        intentional infliction of emotional distress, entitling Sandra to  all damages allowable

        pursuant to law.

        WHEREFORE, PREMISES CONSIDERED, Sandra demands judgment of, from, and

against Allstate for compensatory damages, special damages, plus attorneys fees and

costs, punitive damages, and pre-judgment interest as determined by a jury of Sandra's

peers in Forrest County, Mississippi.

Respectfully submitted this 8th day of August, 2013.

**SANDRA WILLIS, Plaintiff**

s/Samuel S. McHard
SAMUEL S. McHARD, MSB # 100295

SAMUEL S. McHARD, MSB # 100295
McHARD & ASSOCIATES, PLLC
ATTORNEYS AT LAW
15 MILBRANCH ROAD
HATTIESBURG, MS 39402
T: 601-450-1715; F:  601-450-1719
smchard@mchardlaw.com

**CERTIFICATE OF SERVICE**

I, Samuel S. McHard, do hereby certify that on August, 8, 2013, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send notification of such filing to the following:

Toby Gammill
toby@gammillmontgomery.com

*s/  Samuel S. McHard*
SAMUEL S. McHARD